# Exhibit C

 Gmail          **Brittany Beckham <brittfletch@gmail.com>**

## Re: Draft invoices for your review
5 messages

**Brittany Beckham** <brittfletch@gmail.com>     Mon, Jun 15, 2015 at 2:07 PM
To: "Rosedale, Jeffrey" <JRosedale@bakerlaw.com>
Bcc: Jamie.m.klonowski@gmail.com

Hi Jeff,
How are you? Hope you had a blessed weekend. I apologize that I am just now getting back to you; I had a minor surgery on Friday and I had been busy trying to prepare for it days before. I appreciate your email, and your kind words. I have spent most of yesterday and today reviewing everything, and breaking down all of the draft invoices. Gordon and I have also came up with a total billable amount that we believe is both fair and factual.

First things first, you're right, I did describe how I wanted "to go Big or Go Home," but I also didn't understand that by me implying this phrase, it would increase costs so significantly. Lack of communication was the overall reason as to why expenses notably got out of hand. It was a subject that I continued to reiterate from the beginning, and wanted to make sure that you were managing it first before anything else. Like I had mentioned many times before, I am all about building relationships and willing to pay, but when I feel that I am being nickel and dimed for incorrect amounts, and being billed on situations that were solely on building trust and building a relationship, then I am not happy.

I wanted to go over the draft invoices, and review a few of my concerns.

- In the engagement letter, it explains that you will give me a 30 days notice if the hourly rate increases per attorney. In regards to Frank's cost of $725/hour, I would say that this is definitely an increase in hourly wage that I should have been notified about. Also, it says in this letter that the highest hourly rate is $735/hour at your firm, so that's a pretty high hourly increase.

- The initial engagement draft letter was sent beginning of February. In this document, nothing was stated or mentioned as to previous costs that should be included or hours that should be billed, prior to the signing of this agreement. So I'm still confused as to how the things that were mentioned in the first invoice before signing the initial agreement can be billed?
And if they were to be billed, why wasn't this discussed prior to the tasks being done or even at the initial engagement meeting in NY?

-In the first invoice as well. There were costs about talking with Steve Merlin. I know you mentioned you were going to reach out to him, but once again, if these were costs that were going to be billed to me and at your hourly rate of $535/hour…why wasn't I informed? The first time that you had put in writing that your costs were $535/hour were in the draft agreement.

- The fist 7 "descriptive billing phrases" were all to potentially gain me as a client, and if I was to be billed during these times, why weren't things discussed or mentioned?

- The NDA for Eric, yes I believe I should be paying you for this. However, I don't believe that it was something that took more than **$1000** worth of time and effort to come up with this non-disclosure.

- Yes the telecon (3 hour call) we had with Eric, Greg, Tom, and You to discuss everything I should pay you for. Which was **($1605.00)** for 3 hours worth work.

- The Call review with me after this call was 19 minutes long. **($169.00)**

- Telecon with Me, and Eric on February 19, 2015 was 2hrs & 42 minutes. **($1444.50)**

- Meeting with Eric, and I on the phone on February 24, 2015 was 1 hr & 12 mins. **($642.00)**

+ Email communication, and random assortment of tasks.

Gordon and I feel the total for this First Invoice bill: **the total should be**: **$5,860.50**

**Invoice 2:** $13,085.50 (Jeff Rosedale & Frank Pugliese)

- You billed me for 23.5 hours before Frank's involvement. On this bill, you are billing me for almost 12 hours of time. Frank is billing for almost 10 hours of time. I'm confused as to how you were involved with so much work on this (12 hours) when you had specifically said that you would just be forwarding the contract from Eric to Frank in order for Frank to review it. (Implying that he would basically be doing most of the work). It was under my impression, Frank would basically take it over from that point. So I don't understand how that could be almost 12 hours worth of work.

- I do understand that we did have a conference call with Frank for 48 minutes. Which would be **($428.00)** & if Frank's rate is $725/hr then his would be **($580.00)**

- Why was there so much discussion going on with Frank about this agreement? You read over it, and said that you would allow him to look over it and then have him basically proof read it. If you did discuss things with him, I can't imagine them being more than an hours worth of work if that. And if so, I would like to know specifically when these times occurred.

- I understand that Frank did work with Eric and a lot of communication was done between both of them on revisions. I also understand majority of the time that had been spent was waiting on Eric to review the revisions that I had made in the contract. So just trying to get an idea. I do know that Frank did make some revisions, and I had then given him specifics to incorporate into the contract.

- Also, if a call was being done with Steve Merlin, I feel like I should have been aware of this, and known that it was costs that were going to be applied to the total amount.

- The entire portion of the Arizona meeting was to discuss finances with Gordon, and to meet Eric and TC. So I'm confused as to why there was work that was needing to be done prior to this meeting?

- Gordon and I both feel that Frank's time was around 7hrs worth of work. 6 hours on the contract, and 42 minute call. ($4,350) + ($580) = ($4,930)

- Jeff - ($1,230.50)

 **Total Bill** = **$6,160.50**
If this is incorrect, then please let me know.


Third Invoice - $5,312.50

- Monthly Draft Status regarding budget expectations.

- Making adjustments to the contract with Eric. (Many of these were mentioned and billed for in previous bill - even though its a different month) Then they should be split up more accurately.

- It also mentions that I'm billed for Frank's photocopies of the agreement. In the Engagement letter, it states under Fees: That You do not charge for office overhead, telephone, or photocopying. So I'm confused on this statement. If it is postage, then I would like to see the receipt please.

- Also there is so much "business plan review." I'm just confused as to what this is even referring to. There wasn't much that needed to be discussed after we talked about the budget expectations. No need for me to continue to be billed for something that you took upon your own will to just discuss "business plan ideas and strategies." If so, I should have been informed, and not on the billing invoice. And if there was all this discussion, then where is the work on it? A lot of "brainstorming," but where is the actual concepts mentioned or written down to even make them seem like they are worthwhile.

- NDA to Jamie - 20 minutes at most - $160.50

- Reviewing business plan with me on the phone - 30 minutes - $267.50 (Which on the phone you did tell me that you don't bill to discuss costs or review them on the phone, so again I'm confused as to why I'm being billed for this. )


invoice 4 - $160.50

- I am happy to pay Donna. I am just confused as to what I had been billed for in previous invoices, when all this "strategic discussion, and planning" had been done, and not once did we figure out Trendi had something in common with Trendee Me. Just a little strange to me. Also, when it had been discussed prior, that there seems to be nothing out there that would

interfere with this name. Then all of a sudden I do a little research and Donna runs one search and we eliminate it immediately. Happy to pay, just a little caught off guard on to why this took so long to be brought to my attention. And, I even had to do some research on my end.

**Total Cost for Invoice 3 & 4**: **$4,032.50**

**Grand Total**: **$16,053.50**

Please let me know what you think Jeff, and get back to me whenever you have a free moment. Again, when I have your trust, and feel that I am being billed correctly in all areas, I am beyond happy to pay. I don't appreciate being billed for random things that I don't feel were necessary, and just an excuse to increase the billing cost. I've gone over many times how I work better when I visually see the benefit of tasks, and how it's helping my overall business. I am someone who fights for every penny, and knows the value of a dollar.  I am eager to getting this resolved, and moving forward with a fresh start.

Thanks Jeff. Hope you're having a blessed day.


Brittany Beckham



> On Jun 8, 2015, at 4:57 PM, Rosedale, Jeffrey <JRosedale@bakerlaw.com> wrote:
>
> Hi Brittany,
>
> First of all, happy belated birthday. I hope you had an excellent time with family and friends.
>
> Regarding that first invoice early on which you paid, if it was for Invoice #50068220 then it was for initial IP work done by Greg and should be credited to you because we agreed to fix the patent application preparation costs to $15K.
>
> Regarding everything else I am extremely upset with myself. In retrospect, and especially in view of your comments, it's apparent that I clearly got overly excited and overly zealous in helping you make your app and idea the next great big clothing app. I heard you say "Go big, or go home!" and I clearly got carried away.  I thought everything that I, Greg, and TC, were doing for you, like brain storming, IP planning, tech discussions with Eric, etc., was all value-added work on your behalf in order to make this big for you, and accordingly had thought it reasonable to bill you for our time spent.  I also attempted to formalize my thinking for you in the form of the business plan Excel spreadsheet so that you could understand the kinds of costs to expect for this big endeavor - the tech development costs, the legal fees for the contracts, the trademark work, the patent work, and my help. Apparently this is not what you wanted.
>
> I am sorry.
>
> Please let me know what you think would be a fair price to pay for my help and advice and I will have the final invoices revised accordingly. And if you think you shouldn't have to pay for anything related to Donna's "Trendi" trademark search and advice then I will remove those charges too.
>
> I look forward to continuing to work with you and will ensure that you receive pre-estimates for all future work.
>
> My best to you and Gordon,
> Jeff
>
> **Jeffrey H. Rosedale, Ph.D.** | **BakerHostetler**
> 2929 Arch Street | Cira Centre, 12th Floor | Philadelphia, PA 19104-2891
> T 215.564.8969  | F 215.568.3439 | M 215.901.3855
> jrosedale@bakerlaw.com
> My Bio   |   Web site    |   vCard
>
>
> On Jun 7, 2015, at 7:49 PM, Brittany Beckham <brittfletch@gmail.com> wrote:

Hi Jeff,
Hope you had a wonderful weekend as well.

No discussion is needed. I apologize that I'm just now getting back to you. I've been out of town, and I was wanting to sit down and actually review everything. And it was my birthday. :)

To be honest, I'm a little disappointed with these statements. I feel as if much of this information could have been avoided if it had been brought to my attention from the beginning.  The first initial consultation costs and fees were never discussed prior to meeting in New York. I had reached out to you from the beginning as a patent attorney. Nothing more. You took the initiative upon yourself to do many of the things that were mentioned without ever running it by me first. I understand you are doing your job, however, it's also your job to provide your clients upfront with specific details and appropriate fee structures. Having known many details upfront, or specific tasks taking place; I would not have incurred additional expenses in areas I feel could have been eliminated. I do understand there were costs that you did "eliminate," but I do feel they were also embellished in other areas to accommodate those expenses. Also, the amount of research and reviewing that I have been billed for seems extremely high coming from a law firm who already claims expertise in this area.

In addition, I am frustrated by the amount of times I have reiterated to you that cost is a major issue, and I don't feel like you have managed my expectations well in this area. This being such a well known law firm, I am honestly surprised by the constant lack of communication, and repetitive discussion on this topic. Prompt billing has been something that definitely has been deceiving from day one. Many of these descriptive tasks should have been brought to my attention in our initial consultation, as well as not bringing on too many lawyers to just fulfill billable purposes. I've never felt that I have understood, with any clarity, your obligations.  This is extremely disturbing because as of now, the largest bill I have received (by a wide margin), has come from you. This makes no sense to me.

Also, will you please inform me of the bill I paid about a month ago that had been mailed to me. There was no explanation as to what that payment was covering.

I am all about building relationships and working with people like you, but I also have communicated to you that I don't like curveballs being thrown at me. If you're going to bill me, then let me know what I'm being billed for prior to doing the task. As of now, I don't feel it's necessary for a monthly "discussion." When I am ready for the next stage, then I will be happy to contact you. I am eager to resolve this matter as soon as possible so we can continue moving forward. I look forward to hearing from you.

Hope you have a blessed night. Thanks Jeff.

Brittany

Brittany Beckham

On Jun 7, 2015, at 11:41 AM, Rosedale, Jeffrey <JRosedale@bakerlaw.com> wrote:

Hi Brittany,

I hope you are having a wonderful weekend.  Can you plan to give me a call early next week and let me know if you have questions about these invoices?   My accounting department is getting itchy to send you the final invoices.

Best to you and Gordon,
Jeff

---

**From:** Brittany Beckham [mailto:brittfletch@gmail.com]
**Sent:** Tuesday, June 02, 2015 12:57 PM
**To:** Rosedale, Jeffrey
**Subject:** Re: Draft invoices for your review

Hey Jeff,
Thanks so much for getting this to me. I really appreciate it. I am out of town until Thursday. When I get back into town, I will print each of these off and review and get back to you. :)

Thanks so much Jeff,
Hope you have a blessed day.

Britt

Brittany Beckham


On Jun 1, 2015, at 1:14 PM, Rosedale, Jeffrey <JRosedale@bakerlaw.com> wrote:

Brittany,

Here are the draft invoices for your review.  They cover all the work we've done for you from February through the end of April.  Please note that while you will see Tom (TC) Clare's work entries, they all have been zeroed out as we discussed.  A number of other time entries have also been zeroed out and we fixed the Greg's patent work to $15,000, which you already paid.  Please note that payment for the IP counseling work can spread out over 10 months.

I would be able to review these with you tomorrow.

Best regards,

9/20/2021                             Gmail - Re: Draft invoices for your review

Jeff

| My Bio | Web site | vCard |

T  215.564.8969         **Jeffrey H. Rosedale, Ph.D.**
F  215.568.3439
M 215.901.3855         jrosedale@bakerlaw.com

www.bakerlaw.com
                        BakerHostetler
                        2929 Arch Street
                        Cira Centre, 12th Floor
                        Philadelphia, PA 19104-2891

<image002.jpg>

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

<IP Counseling DRAFT through February 28, 2015.doc>
<IP Counseling DRAFT March 1 through March 31, 2015.doc><IP Counseling DRAFT April 1 through April 30, 2015.doc><US Patent DRAFT through April 30, 2015.doc><Trendi DRAFT April 1 through April 30, 2015.doc>

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are

**Ex. C-6**

present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

**Rosedale, Jeffrey** <JRosedale@bakerlaw.com>　　　　　　　　　　　　　　　　Mon, Jun 15, 2015 at 2:26 PM
To: Brittany Beckham <brittfletch@gmail.com>

Brittany,

Thank you very much for your detailed comments.  We will make all of the adjustments you requested. Going forward we will ensure to provide you estimates before beginning any additional work.

Best regards,

Jeff

My Bio | Web site | vCard　　　　　　　　　　　　　　　　　　[Quoted text hidden]
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[Quoted text hidden]

T  215.564.8969　　　**Jeffrey H. Rosedale, Ph.D.**
F  215.568.3439
M 215.901.3855

www.bakerlaw.com　　jrosedale@bakerlaw.com

　　　　　　　　　　BakerHostetler
　　　　　　　　　　2929 Arch Street
　　　　　　　　　　Cira Centre, 12th Floor
　　　　　　　　　　Philadelphia, PA 19104-2891



**Brittany Fletcher** <brittfletch@gmail.com>　　　　　　　　　　　Mon, Jun 15, 2015 at 4:37 PM
To: "\"Jamie ♂.com\"" <Jamie.m.klonowski@gmail.com>

Brittany Beckham

Begin forwarded message:

[Quoted text hidden]

---

**Brittany Fletcher** <brittfletch@gmail.com>　　　　　　　　　　　Mon, Jun 15, 2015 at 4:38 PM
To: My Hubby♡🎮 <gordonbeckham@gmail.com>

Brittany Beckham

Begin forwarded message:

> **From:** "Rosedale, Jeffrey" <JRosedale@bakerlaw.com>
> **Date:** June 15, 2015 at 1:26:38 PM CDT
> **To:** Brittany Beckham <brittfletch@gmail.com>
> [Quoted text hidden]

[Quoted text hidden]

---

**Brittany Beckham** <brittfletch@gmail.com>　　　　　　　　　　　Mon, Jun 15, 2015 at 4:39 PM
To: "Rosedale, Jeffrey" <JRosedale@bakerlaw.com>

Jeff,

Thanks so much. I really appreciate you making these adjustments, and understanding where I'm coming from. That truly means a lot. Thanks so much again, and hope that you're having a blessed day.

Talk with you  soon. :)

Britt

Brittany Beckham

> On Jun 15, 2015, at 1:26 PM, Rosedale, Jeffrey <JRosedale@bakerlaw.com> wrote:
>
> Brittany,
>
> Thank you very much for your detailed comments.  We will make all of the adjustments you requested. Going forward we will ensure to provide you estimates before beginning any additional work.
>
> Best regards,
> Jeff

9/20/2021                      Gmail - Re: Draft invoices for your review

**My Bio** | **Web site** | **vCard**

T  215.564.8969    **Jeffrey H. Rosedale, Ph.D.**
F  215.568.3439
M 215.901.3855    jrosedale@bakerlaw.com
www.bakerlaw.com

BakerHostetler
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA 19104-2891

<image003.jpg>

---

**From:** Brittany Beckham [mailto:brittfletch@gmail.com]
**Sent:** Monday, June 15, 2015 2:08 PM
**To:** Rosedale, Jeffrey
**Subject:** Re: Draft invoices for your review

Hi Jeff,
How are you? Hope you had a blessed weekend. I apologize that I am just now getting back to you; I had a minor surgery on Friday and I had been busy trying to prepare for it days before. I appreciate your email, and your kind words. I have spent most of yesterday and today reviewing everything, and breaking down all of the draft invoices. Gordon and I have also came up with a total billable amount that we believe is both fair and factual.

First things first, you're right, I did describe how I wanted "to go Big or Go Home," but I also didn't understand that by me implying this phrase, it would increase costs so significantly. Lack of communication was the overall reason as to why expenses notably got out of hand. It was a subject that I continued to reiterate from the beginning, and wanted to make sure that you were managing it first before anything else. Like I had mentioned many times before, I am all about building relationships and willing to pay, but when I feel that I am being nickel and dimed for incorrect amounts, and being billed on situations that were solely on building trust and building a relationship, then I am not happy.

I wanted to go over the draft invoices, and review a few of my concerns.

- In the engagement letter, it explains that you will give me a 30 days notice if the hourly rate increases per attorney. In regards to Frank's cost of $725/hour, I would say that this is definitely an increase in hourly wage that I should have been notified about. Also, it says in this letter that the highest hourly rate is $735/hour at your firm, so that's a pretty high hourly increase.

- The initial engagement draft letter was sent beginning of February. In this document, nothing was stated or mentioned as to previous costs that should be included or hours that should be billed, prior to the signing of this agreement. So I'm still confused as to how the things that were mentioned in the first invoice before signing the initial agreement can be billed?
And if they were to be billed, why wasn't this discussed prior to the tasks being done or even at the initial engagement meeting in NY?

-In the first invoice as well. There were costs about talking with Steve Merlin. I know you mentioned you were going to reach out to him, but once again, if these were costs that were

Ex. C-9

going to be billed to me and at your hourly rate of $535/hour…why wasn't I informed? The first time that you had put in writing that your costs were $535/hour were in the draft agreement.

- The fist 7 "descriptive billing phrases" were all to potentially gain me as a client, and if I was to be billed during these times, why weren't things discussed or mentioned?

- The NDA for Eric, yes I believe I should be paying you for this. However, I don't believe that it was something that took more than **$1000** worth of time and effort to come up with this non-disclosure.

- Yes the telecon (3 hour call) we had with Eric, Greg, Tom, and You to discuss everything I should pay you for. Which was **($1605.00)** for 3 hours worth work.

- The Call review with me after this call was 19 minutes long. **($169.00)**

- Telecon with Me, and Eric on February 19, 2015 was 2hrs & 42 minutes. **($1444.50)**

- Meeting with Eric, and I on the phone on February 24, 2015 was 1 hr & 12 mins. **($642.00)**

+ Email communication, and random assortment of tasks.

Gordon and I feel the total for this First Invoice bill: **the total should be**: **$5,860.50**

**Invoice 2:** $13,085.50 (Jeff Rosedale & Frank Pugliese)

- You billed me for 23.5 hours before Frank's involvement. On this bill, you are billing me for almost 12 hours of time. Frank is billing for almost 10 hours of time. I'm confused as to how you were involved with so much work on this (12 hours) when you had specifically said that you would just be forwarding the contract from Eric to Frank in order for Frank to review it. (Implying that he would basically be doing most of the work). It was under my impression, Frank would basically take it over from that point. So I don't understand how that could be almost 12 hours worth of work.

- I do understand that we did have a conference call with Frank for 48 minutes. Which would be**($428.00)** & if Frank's rate is $725/hr then his would be **($580.00)**
[Quoted text hidden]
[Quoted text hidden]

**Ex. C-10**