# Exhibit X

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| BRITTANY FLETCHER BECKHAM and LUTZY, INC., ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) v. ) ) | FILE NO. _____ |
| BAKER & HOSTETLER, LLP and GREGORY GRISSETT, ) ) ) | |
| Defendants. ) ) | |

## AFFIDAVIT OF DAVID HRICIK
## PURSUANT TO O.C.G.A. § 9-11-9.1

COMES NOW David Charles Hricik, after being first duly sworn, and deposes and states on oath the following:

1. My name is David Charles Hricik, I am over the age of twenty-one years old, and am competent to make this Affidavit.

2. I am an attorney licensed to practice law in the States of Texas (1988) and Georgia (2006).

3. I represented clients in patent, trademark, legal malpractice, and other complex litigation matters.

4. During the time that I practiced law full-time, I defended many law firms from accusations of conflicts of interest and, on occasion, prosecuted such suits and proceedings on behalf of plaintiffs.

5. Currently, I represent lawyers and serve as an expert witness in other matters involving conflicts of interest, legal ethics, and related matters.

1

6. Since 2002, I have been a professor of Law at Mercer University School of Law in Macon, Georgia.

7. I have taught courses in legal ethics, torts, patent law and litigation, and federal civil procedure.

8. In October 2021, I was appointed as associate dean for faculty research and development, and am responsible for supporting faculty efforts in teaching, research, and scholarship.

9. I have also served as visiting Professor of Law at John Marshall School of Law in Atlanta, Georgia.

10. As a Professor of Law, I have taught legal ethics at Mercer, George Washington University, University of Houston, and John Marshall.

11. I have written numerous articles and published several books addressing conflicts of interest. I have also authored the only treatise on ethical issues in patent litigation and co-authored the only treatise on ethical issues in patent prosecution.

12. I have attached a copy of my *Curriculum Vitae* to this Affidavit as **Exhibit A**.

13. I have reviewed the Complaint as well as the exhibits attached thereto in the matter styled *Brittany Beckham and Lutzy, Inc. v. Baker & Hostetler and Gregory Grissett*.

14. I have also reviewed additional materials, including without limitation, the following:

    (a) Patent applications listing Dipali Goenka as an inventor;

    (b) The file wrapper for both the Plaintiffs' US Patent No. 10,339,593 and Welspun's US Patent No. 9,524,589; and

2

(c) Emails and text messages exchanged between Ms. Beckham and lawyers with Baker & Hostetler.

15. I do not know, either personally or professionally, any of the current or former Baker & Hostetler lawyers referenced in the Complaint, namely Gregory Grissett and Jeffrey Rosedale.

16. It is my understanding that while Mr. Grissett worked out of Baker & Hostetler's Philadelphia, Pennsylvania office, he was licensed to practice law in North Carolina and registered to practice before the U.S. Patent and Trademark Office.

17. Based on the circumstances as stated in the Complaint, it is my opinion in this matter that neither Mr. Grissett nor Baker & Hostetler (collectively, "Defendants") provided the requisite standard of care expected of lawyers authorized to practice in this State, before the U.S. Patent and Trademark Office, Pennsylvania, or North Carolina.

18. All attorneys owe their clients certain fiduciary duties.

19. The fiduciary duties that attorneys owe their clients include, among others, those of loyalty, to exercise the utmost good faith, to apply their best skill, zeal, and diligence in representing the client, to communicate sufficient information for the client to make informed decisions, and to avoid interests or actions that are incompatible with the client's interests.

20. In my opinion, Baker & Hostetler and Mr. Grissett breached at least one of their fiduciary obligations owed to Ms. Beckham and/or her company, Lutzy, Inc. (collectively, "Plaintiffs").

21. Based on my review of the above-referenced documents and materials, Defendants represented both Ms. Beckham and Welspun India Limited ("Welspun").

3

22. Ms. Beckham retained Baker & Hostetler by executing an engagement letter on February 10, 2015.[1]

23. Pursuant to the engagement letter, Ms. Beckham retained Baker & Hostetler to represent her in connection with developing a company and intellectual property for commercializing her smart wardrobe fashion system, for example, by filing one or more patent applications.

24. Based on my review of documents provided to me, Baker & Hostetler's relationship with Ms. Beckham extended beyond merely providing advice and counsel on legal matters. Specifically, Baker & Hostetler regularly advised Ms. Beckham on purely business matters, including hiring decisions and drafting business plans.

25. Baker & Hostetler's attorneys, mainly Jeffery Rosedale, repeatedly acted and made statements and representations to Ms. Beckham that venture well beyond legal advice. This includes, for example, the following:

(a) "[E]xploring with you just how BIG your app/network/social media fashion system can become some day [*sic*];"

(b) "We'll be thinking and working on an initial strategy plan to help you … launch your new business;"

(c) "I really could have used your app this morning;"

(d) "[T]yping out an outline of business plan Go-Dos for [Ms. Beckham] to think about;"

---

[1] It is my understanding that Lutzy, Inc. was formed later and entered an engagement agreement with Baker & Hostetler *after* Defendants began their representation of both Ms. Beckham and Welspun.

(e) Recommending names for Ms. Beckham's company ("I just thought of this name");

(f) "We need to surround you with top-end sophisticated people to help you make this BIG;"

(g) "I would feel A LOT BETTER if you worked with a more sophisticated technology development group;"

(h) "I don't get the sense that [current software application developer] can help you become BIG;"

(i) Setting up and conducting interviews with potential new software application developer ("Initially, we'll just get a feel for Eric and make sure he's the right guy"); and

(j) Promising to monitor software application development to ensure "everything stays on track/on budget" by holding regular status update meetings with developer.

26. It is my understanding that the core concepts of Ms. Beckham's smart wardrobe fashion system include machine learning, artificial intelligence, and augmented reality.

27. Baker & Hostetler assigned responsibility for drafting Ms. Beckham's patent applications to Mr. Grissett.

28. Mr. Grissett filed a provisional patent application on behalf of Ms. Beckham on July 7, 2015.

29. Ms. Beckham's provisional patent application drafted and filed by Mr. Grissett defines "fashion item" as including, among other things, "any type of garment."

5

30. Ms. Beckham's provisional patent application drafted and filed by Mr. Grissett discloses the use of augmented reality to manipulate "fashion items," including "any type of garment."

31. Shortly after Defendants filed Ms. Beckham's provisional patent application, Welspun India, Ltd. ("Welspun") retained Baker & Hostetler to file a number of patent applications on its behalf.

32. Baker & Hostetler's representation of Welspun created a potential conflict of interest which it was required to disclose to Ms. Beckham.

33. It is my understanding that neither Baker & Hostetler nor Mr. Grissett disclosed the potential conflict of interest resulting from Baker & Hostetler's agreement to take Welspun on as a new client.

34. I have reviewed the engagement letter between Ms. Beckham and Baker & Hostetler and, in my opinion, Baker & Hostetler's attempt therein to obtain a written waiver from Ms. Beckham of all "present or future" conflicts of interest is unenforceable.

35. Baker & Hostetler also assigned responsibility for drafting Welspun's patent applications to Mr. Grissett.

36. In September 2015, Mr. Grissett, on behalf of Welspun, filed (a) a U.S. non-provisional patent application for "INTERACTIVE TEXTILE ARTICLE ANDAUGMENTED REALITY SYSTEM" and (b) a U.S. provisional patent application for "BEDDING ARTICLES INCLUDING MOISTURE SENSORS."

37. According to Welspun's website, it is a "Global Leader in Home Textiles."

38. Although Welspun does not appear to be in the garment industry, Mr. Grissett defines "textiles" as including garments in both September 2015 patent applications he drafted and filed on behalf of Welspun.

39. A substantial portion of the specifications in Welspun's September 2015 non-provisional application are copied verbatim from Ms. Beckham's July 7, 2015 provisional application.

40. The specifications that Mr. Grissett copied from Ms. Beckham's application and pasted into Welspun's application are not merely background information.

41. If Baker & Hostetler drafted a claim for Welspun to cover an invention conceived by Ms. Beckham, such would constitute a breach of Baker & Hostetler's duties owed to Ms. Beckham. Likewise, if Baker & Hostetler claimed an invention for Welspun conceived by Ms. Beckham or disclosed her confidential information to Welspun, such would also result in a breach of Baker & Hostetler's duties owed to Ms. Beckham.

42. It is my understanding that U.S. Patent No. 9,524,589 B1 issued to Welspun on December 20, 2016 on the non-provisional application filed on its behalf by Mr. Grissett on September 16, 2015 (the "Welspun '589 Patent"). The prosecution was expedited under Track One.

43. Ms. Beckham's current patent attorney, Tracy Hitt from Fish & Richardson, has provided a written opinion that Plaintiffs are "blocked" from practicing their inventions by at least Claim 17 of the Welspun '589 Patent. I also understand that Ms. Beckham's provisional application filed by Mr. Grissett discloses at least the invention claimed in Claim 17 of the Welspun '589 Patent.

7

44. Defendants knew at the time they agreed to take on Welspun as a client that they also represented Ms. Beckham.

45. In my opinion, a competent lawyer representing Ms. Beckham and Lutzy had a duty to exercise ordinary care, skill, and diligence on behalf of Ms. Beckham and Lutzy. This includes the duty to communicate sufficient information from which Ms. Beckham can make informed decisions.

46. Pursuant to Defendants' duties owed to Ms. Beckham, Defendants should have known that they had a duty to disclose any actual or potential conflicts of interest to Ms. Beckham.

47. Pursuant to Defendants' duties owed to Ms. Beckham, Defendants should have known that they could not prosecute a patent application for an "INTERACTIVE TEXTILE ARTICLE AND AUGMENTED REALITY SYSTEM" which extended to "garments" for Welspun without at least first disclosing the conflict of interest to Ms. Beckham.

48. Defendants failed to disclose the conflict of interest resulting from their agreement to represent Welspun.

49. It is my understanding that Ms. Beckham neither waived nor was asked to waive any actual or potential conflict of interest on behalf of herself or Lutzy.

50. A competent lawyer, in my opinion, would have concluded that representing both Plaintiffs and Welspun resulted in a breach of Defendants' fiduciary obligations to Plaintiffs.

51. In addition, as part of Defendants' duties owed to Ms. Beckham, Defendants should have known that representing both Ms. Beckham and Welspun resulted in a concurrent

8

conflict of interest under the Georgia Rules of Professional Conduct,[2] U.S. Patent and Trademark Office Rules of Professional conduct,[3] and the North Carolina Rules of Professional Conduct.[4]

---

[2] Rule 1.7 of the Georgia Rules of Professional Conduct set for the general rule governing conflicts of interests, providing in pertinent part as follows:

(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

(b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former clients gives informed consent, confirmed in writing, to the representation after:

  (1) Consultation with the lawyer, pursuant to Rule 1.0(c);
  (2) Having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation; and
  (3) Having been given an opportunity to consult with independent counsel.

(c) Client informed consent is not permissible if the representation:

  (1) Is prohibited by law or these rules;
  (2) Includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceedings; or
  (3) Involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.

….

[3] Part 11 of Title 37, Chapter I, Subchapter A of the Code of Federal Regulations governs the conduct of lawyers practicing before the U.S. Patent and Trademark Office. Regarding concurrent conflicts of interests, 37 C.F.R. § 11.107 provides as follows:

(a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

  (4) the representation of one client will be directly adverse to another client; or
  (5) there is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a) of this section, a practitioner may represent a client if:

  (1) the practitioner reasonably believes that the practitioner will be able to provide competent and diligent representation to each affected client;
  (2) the representation is not prohibited by law;
  (3) the representation does not involve the assertion of a claim by one client against another client represented by the practitioner in the same litigation or other proceedings before a tribunal; ***and***
  (4) each affected client gives informed consent, confirmed in writing.

9

52. Defendants, as part of their fiduciary duties, had an obligation to proceed as was reasonably necessary in the best interests of Plaintiffs.

53. On July 7, 2016, Mr. Grissett, on behalf of Plaintiffs, filed (a) a non-provisional patent application with the U.S. Patent and Trademark Office; and (b) an international application pursuant to the Patent Cooperation Treaty (the "PCT Application").

54. Under the applicable laws, rules, and regulations governing priority for patent rights, Ms. Beckham's July 7, 2016 applications claim priority dates relating back to the filing of her provisional application on July 7, 2015.

55. A reasonably prudent patent attorney exercising ordinary diligence and skill should consider whether to add additional detail to the specification and change or add claims in a non-provisional application.

---

(Emphasis added).

[4] Rule 1.7 of the North Carolina Rules of Professional Conduct provides as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

   (1) the representation of one client will be directly adverse to another client; or

   (2) the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

   (2) the representation is not prohibited by law;

   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceedings before a tribunal; ***and***

   (4) each affected client gives informed consent, confirmed in writing.

(Emphasis added).

56. A reasonably prudent patent attorney exercising ordinary diligence and skill must provide a client with sufficient information for the client to make an informed decision regarding whether to pursue international patent protection.

57. Mr. Grissett, in my opinion, failed to act as a reasonably prudent patent attorney would have acted under similar or like circumstances by, among other things, failing to communicate sufficient information to Ms. Beckham regarding whether she should continue her pursuit for international patent protection for her inventions.

58. There is a stark contrast between the advice Mr. Grissett gave to Ms. Beckham about the lack value of pursuing patent rights for her inventions and his concurrent actions of aggressively pursuing such rights for Welspun.

59. If Plaintiffs practice Ms. Beckham's inventions, it is my opinion that it would infringe at least Claim 17, creating an obvious risk of litigation by Welspun against the Plaintiffs.

60. The fact that Plaintiffs may eventually prevail in any litigation brought by or against Welspun is irrelevant as to the existence of an actual concurrent conflict of interest.

61. The test for determining whether there is a conflict of interest under the applicable rules of professional conduct is whether the clients' interests are "adverse" or whether there is a significant risk that the representation of one client will be materially and adversely affected the representation of another client.

62. In my opinion, therefore, Defendants breached their fiduciary duties owed to Plaintiffs by, among other things: (a) failing to remain loyal to Plaintiffs; (b) failing to apply their best skill, zeal, and diligence to their representation of Plaintiffs; (c) failing to exercise the utmost good faith in their representation of Plaintiffs; (d) failing to diligently represent

11

Plaintiffs; (e) failing to disclose sufficient information to enable Plaintiffs to make informed decisions; (f) failing to avoid interests or actions that were incompatible with Plaintiffs' interests, and (g) using Plaintiffs' confidential information to benefit Welspun..

FURTHER AFFIANT SAYETH NOT

David Charles Hricik

Sworn to and subscribed to this 19th day of September, 2022

Notary Public

My commission expires: 11/14/2025

Steve Lindsey
NOTARY PUBLIC
Bibb County
State of Georgia
My Comm. Expires November 14, 2025

12