IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRITTANY FLETCHER
BECKHAM and LUTZY, INC.,

      **Plaintiffs,**

v.

BAKER & HOSTETLER, LLP, and
GREGORY GRISSETT,

      **Defendants.**

CIVIL ACTION FILE

NO. 1:22-CV-4420-MHC

## ORDER

This case comes before the Court on Defendant Gregory Grissett

("Grissett")'s Motion to Dismiss for Lack of Personal Jurisdiction ("Def.'s Mot. to

Dismiss") [Doc. 22] and Plaintiffs' Motion for Limited Jurisdictional Discovery

("Pls.' Mot. for Disc.") [Doc. 27].

## I.   BACKGROUND[1]

---

[1] Because this case is before the Court on a motion to dismiss, the facts are
presented as alleged in the Second Amended Complaint ("Am. Compl.") [Doc.
31]. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019)
(citation omitted). The parties stipulated that the arguments made in Defendant's
Motion to Dismiss apply to the Second Amended Complaint even though that
pleading was filed after the Motion to Dismiss was filed. See Consent Order
Granting Leave to Allow Pl. to File Second Am. Compl. [Doc. 30] at 2.

Plaintiffs Brittany Fletcher Beckham ("Beckham") and Lutzy, Inc. bring the above-styled action against the law firm Baker & Hostetler, LLP ("B&H"), and one of its former associates, Grissett, alleging that Defendants' representation of both Beckham and another B&H client at the same time before the U.S. Patent and Trademark Office ("USPTO") constituted a conflict of interest under 37 C.F.R. § 11.107(a)(1), and give rise to Plaintiffs' claims of breach of fiduciary duties (Counts I & II) and fraudulent concealment (Count III). Am. Compl. ¶¶ 1, 151-224. More specifically, Plaintiffs allege that Beckham retained B&H "to represent her in connection with developing a company and intellectual property for commercializing her smart wardrobe fashion system," which representation included the "filing [of] one or more patent applications." Id. ¶ 46. "Defendant Grissett's representation of Plaintiffs involved the filing of multiple patent applications." Id. ¶ 10. Among other things, Plaintiffs allege that Defendants failed to perform adequate safeguards for conflicts of interest between Beckham and other B&H clients and that B&H undertook the representation of another client with a direct conflict of interest with Beckham. Id. ¶¶ 59, 61, 73-79, 158, 163-72, 179-87, 192-200. Plaintiffs jointly assert identical claims against both Defendants and also seek punitive damages and attorney's fees. Id. ¶¶ 225-231.

Grissett, a resident of New Hampshire, is alleged to have "regularly and routinely" corresponded with Beckham "via telephone, email, and text message" between 2015 and 2018 while Beckham was physically in the State of Georgia.  Id. ¶¶ 8-9.  Plaintiffs allege that Grissett's correspondence with Beckham is the basis for liability in the claims asserted against him.  Id. ¶ 8.  Grissett maintains that he does not and has never worked in Georgia, is not licensed to practice law in Georgia, and, while working for B&H on the Beckham matter, never engaged in any negotiations, meetings, or conferences in Georgia.  Decl. of Gregory Grissett (Dec. 5, 2022) ("Grissett Decl.") [Doc. 22-1] ¶¶ 3-5, 8.  Grissett states that he worked for the Philadelphia, Pennsylvania, office of B&H and did not solicit business from, or negotiate any contract with, Plaintiffs related to their engagement of B&H for the legal work that is the subject of this lawsuit.  Id. ¶¶ 7, 9; see also Am. Compl. ¶ 18 ("At the time of the events giving rise to this action, Gregory Grissett was an associate patent attorney in Defendant B&H's Philadelphia, Pennsylvania office.").

## II.    LEGAL STANDARD

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  Diamond Crystal Brands, Inc. v.

3

Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quotation and

citation omitted); see also Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214

(11th Cir. 1999).  When no evidentiary hearing is held on a motion to dismiss for

lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima

facie case of personal jurisdiction over the nonresident defendant.  Madara v. Hall,

916 F.2d 1510, 1514 (11th Cir. 1990).  A prima facie case exists where the plaintiff

presents enough evidence to survive a motion for a directed verdict.  Consol. Dev.

Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).  A plaintiff presents

enough evidence to withstand a motion for a directed verdict by putting forth

evidence of such quality and weight that "reasonable and fair-minded persons in

the exercise of impartial judgment might reach different conclusions."  Miller v.

Roche Sur. & Cas. Co., 502 F. App'x 891, 893 (11th Cir. 2012).

    "The court construes the allegations in the complaint as true to the extent

that they are uncontroverted by defendant's evidence."  Paul, Hastings, Janofsky &

Walker, LLP v. City of Tulsa, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).  If the

nonresident defendant challenges jurisdiction and supports the challenge with

affidavit evidence, the burden shifts back to the plaintiff to produce evidence

supporting jurisdiction.  Diamond Crystal, 593 F.3d at 1257.  "Where the

plaintiff's complaint and supporting evidence conflict with the defendant's

4

affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id. (citation and quotation omitted).

## III.  ANALYSIS – MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' Amended Complaint against Grissett for lack of personal jurisdiction.  Defs.' Mot. to Dismiss.  Plaintiffs allege that "Grissett is subject to the specific personal jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1), (2), and/or (3)."  Am. Compl. ¶ 7 ; see also, id. ¶ 9 (alleging that "Grissett's correspondence directed to Ms. Beckham, both individually and as the principal of Plaintiff Lutzy, in Georgia relates specifically to Plaintiffs' causes of action and, in fact, has given rise to them.").  Plaintiffs do not allege or argue that Grissett is subject to the general personal jurisdiction of this Court.  Thus, the Court considers only whether it has specific personal jurisdiction over Grissett.

To determine whether specific personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal, 593 F.3d at 1257-58 (internal quotation marks and citation omitted).  District courts in Georgia should take care not to conflate these two

inquiries because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process. Id. at 1259. Instead, Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. (footnote omitted). This Court must interpret and apply Georgia's long-arm statute literally. Id. (footnote omitted).

## A.    Georgia's Long-Arm Statute

Georgia's long-arm statute reaches only those nonresidents whose conduct brings them within the coverage under one of the six subsections of O.C.G.A. § 9-10-91. Plaintiffs contend that Grissett is covered under the long-arm statute because he transacted business in Georgia and committed tortious acts and omissions in Georgia. Pls.' Resp. to Grissett's Mot. to Dismiss (Pls.' Opp'n") [Doc. 32] at 3-6, 23-24. The applicable subsections of the long-arm statute provide as follows:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state; [or] (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

6

O.C.G.A. § 9-10-91(1-3).

### 1.    Transacts Business

The Georgia long-arm statute's "transacts any business" requirement must be interpreted literally.  Diamond Crystal, 593 F.3d at 1259.  Under Georgia law, the "transacts any business" subsection of the long-arm statute grants specific personal jurisdiction over a nonresident defendant if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of [Georgia] does not offend traditional fairness and substantial justice."  Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517-18 (2006) (citation and quotation omitted).

A nonresident defendant need not be physically present in Georgia to "transact business" in Georgia and courts therefore must consider a nonresident's mail, telephone, email, and other "intangible" acts that occurred while the nonresident defendant is physically outside of Georgia.  Diamond Crystal, 593 F.3d at 1264 (quoting Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 279 Ga. 672, 676 (2005)); see also Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1368 (N.D. Ga. 2013) (citing Diamond Crystal, 593 F.3d at 1264) (holding that a nonresident defendant need not physically enter Georgia for the

7

court to exercise jurisdiction over it: "[t]ransacting 'any business' by mail,

telephone, or the internet will suffice.").

> In conducting this mixed law and fact inquiry, we find instructive the
> literal definition of the words in the statute. "Transact" means "to
> prosecute negotiations," to "carry on business," "to carry out," or "to
> carry on." Webster's Third New Int'l Dictionary 2425 (1993). "Any"
> means "to any extent" or "in any degree." Id. at 97. "Business" means
> "activity directed toward some end," or "a usually commercial or
> mercantile activity customarily engaged in as a means of livelihood,"
> or "transactions, dealings, or intercourse of any nature." Id. at 302.
> Hewing closely to the plain meaning of the statute serves the twin goals
> of giving effect to legislative intent and not engrafting requirements that
> do not appear on the face of the "plain and unambiguous statutory
> language," Innovative Clinical, 279 Ga. at 676.

Diamond Crystal, 593 F.3d 1249, 1265 (11th Cir. 2010).

Plaintiffs allege that between 2015 and 2018, Grissett "regularly and

routinely" corresponded with Beckham via "telephone, email, and text message"

while she was physically in Georgia and that this correspondence was specifically

related and gives rise to the claims in this case. Am. Compl. ¶¶ 8-9. Many

examples of this correspondence are attached to the Amended Complaint. See e.g.,

Email from Grissett to Beckham (Apr. 13, 2015) [Doc. 31-8]; Email from Grissett

to Beckham (Feb. 3, 2016) [Doc. 31-13]; Email from Grissett to Beckham (May

18, 2016) [Doc. 31-14]; Email from Grissett to Beckham (June 22, 2016) [Doc. 31-

15]; Email from Grissett to Beckham (July 6, 2016) [Doc. 31-17]; Email from

Grissett to Beckham (July 8, 2016) [Doc. 31-18]; Text messages between Grissett

and Beckham (Jan. 2, 2018, to Jan. 9, 2018) [Doc. 31-22]. Plaintiffs argue that this included at least ninety-five emails and over 250 text messages. Pls.' Opp'n at 8 (citing screen shot of Beckham's Gmail account indicating there were 95 emails sent from Grissett [Doc. 32-1 at 2], and text messages between Grissett and Beckham (Mar. 2015 through Jan. 2018) [Doc. 32-3]). Plaintiffs further allege that Grissett knew Beckham was a resident of Georgia and physically present in the State of Georgia. Id. ¶ 9. Grissett admits that "there is no doubt that Mr. Grissett communicated via phone, text and email with Ms. Beckham in the course of his employment with Baker & Hostetler." Def. Grissett's Reply in Supp. of His Mot. to Dismiss [Doc. 35] at 3.

Plaintiffs' undisputed allegations that Grissett regularly corresponded with Beckham via telephone, email, and text message while representing her in the legal matter before the USPTO that is the subject of this case meets the "low burden of the long arm statute." M.P. Tulsa, LLC v. SH CCRC, LLC, No. 1:15-CV-04440-RWS, 2016 WL 4396165, at *3 (N.D. Ga. Aug. 17, 2016) (holding that the uncontroverted allegations that the nonresident defendants intangibly transacted business in Georgia through sending emails, payments, and telephone calls to the plaintiff in Georgia were sufficient to satisfy the transacts business provision of the Georgia long-arm statute); see also Rowe v. Gary, Williams, Parenti, Watson &

9

Gary, P.L.L.C., No. 1:16-CV-1499-MHC, 2016 WL 10540639, at *3 (N.D. Ga.

Nov. 29, 2016), aff'd sub nom., Rowe v. Gary, Williams, Parteni, Watson & Gary,

P.L.L.C., 723 F. App'x 871 (11th Cir. 2018) (finding that the uncontroverted

evidence of fax or telephone communications from the nonresident defendant

lawyers to the plaintiffs while the plaintiffs were in Georgia related to the

prosecution of a legal matter in New York and was sufficient to meet the transacts

business prong of the Georgia long-arm statute).

### 2.    Tortious Act and Injury

Because the Court finds that the transacts business provision of the long-arm

statute under O.C.G.A. § 9-10-91(1) is satisfied, the Court need not address

Plaintiffs' arguments regarding Grissett's alleged tortious behavior and the

concomitant application of O.C.G.A. §§ 9-10-91(2) and/or (3).

### B.    Due Process

Due process requires that (1) a nonresident defendant has certain minimum

contacts with the forum state and (2) the exercise of jurisdiction does not offend

"traditional notions of fair play and substantial justice." Diamond Crystal, 593

F.3d at 1267.  To satisfy the requirements of due process, Plaintiffs must establish

either general or specific jurisdiction. Goodyear Dunlop Tires Operations, S.A. v.

Brown, 564 U.S. 915, 919 (2011).[2] "Specific jurisdiction . . . depends on the

affiliation between the forum and the underlying controversy, principally, activity

or an occurrence that takes place in the forum State and is therefore subject to the

State's regulation." Goodyear, 564 U.S. at 919 (internal punctuation and citation

omitted).

> In specific personal jurisdiction cases, we apply the three-part due
> process test, which examines: (1) whether the plaintiff's claims "arise
> out of or relate to" at least one of the defendant's contacts with the
> forum; (2) whether the nonresident defendant "purposefully availed"
> himself of the privilege of conducting activities within the forum state,
> thus invoking the benefit of the forum state's laws; and (3) whether the
> exercise of personal jurisdiction comports with "traditional notions of
> fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013)

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73, 474–75 (1985)).

"The plaintiff bears the burden of establishing the first two prongs, and if the

---

[2] A court should assert general jurisdiction over non-residents only where "'their
affiliations with the State are so 'continuous and systematic' as to render them
essentially at home in the forum State.'" Schulman v. Inst. for Shipboard Educ.,
624 F. App'x 1002, 1005 (11th Cir. 2015) (quoting Goodyear, 564 U.S. at 919).
The Supreme Court has established a high bar for the quantity of contacts that rise
to the level of "continuous and systematic." Helicopteros v. Nacionales de
Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).   Plaintiffs have alleged no facts
to suggest that Defendants' affiliations with Georgia were so "continuous and
systematic" as to render them subject to general personal jurisdiction in Georgia.
In fact, Plaintiffs allege only that "Grissett is subject to the specific personal
jurisdiction of this Court." Am. Compl. ¶ 7.

plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" Id. (quoting Diamond Crystal, 593 F.3d at 1267).

Despite meeting the "low burden" imposed for exercise of specific jurisdiction under Georgia's long-arm statute, the Court finds that Plaintiffs have failed to establish the requisite minimum contacts between Grissett and the state of Georgia to establish specific personal jurisdiction.

### 1.   Minimum Contacts

To constitute minimum contacts for the purposes of specific jurisdiction,

> the [nonresident] defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."

Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994) (quoting Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1992)). The defendant's contacts must create a "substantial connection" with the forum state. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222-23 (1957)). The Court's "focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately

12

engaged in significant activities within a state or created continuing obligations with residents of the forum." Diamond Crystal, 593 F.3d at 1268 (citing Burger King, 471 U.S. at 475, 480).  The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 571 U.S. 277, 285-86 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Id., 571 U.S. at 86 ((quoting Burger King, 471 U.S. at 475); Diamond Crystal, 593 F.3d at 1268 ("This focus ensures that a defendant will not be subject to jurisdiction based solely on 'random,' 'fortuitous,' or 'attenuated' contacts.") (quotation and citation omitted).

"The heart [of the due process] protection is fair warning." Diamond Crystal, 593 F.3d at 1267.  This requirement is satisfied only if the defendant has purposely established contacts in the forum state and there is "a sufficient nexus between those contacts and the litigation," id., and the contact is "a 'but-for' cause of the tort . . . ." Oldfield v. Pueblo de Bahia Lora, S.A., 558 F.3d 1210, 1222-23 (11th Cir. 2009).  Further, in analyzing minimum contacts, great weight is often

placed on which party initiated the contact that led to the relationship and the fact that a Georgia plaintiff may have initiated contact with the nonresident defendant weighs against finding jurisdiction. See, e.g., Railcar, Ltd. v. S. Ill. Railcar Co., 42 F. Supp. 2d 1369, 1374 (N.D. Ga. 1999); Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp., 926 F. Supp. 1106, 1115 (N.D. Ga. 1996) ("In contrast to instances where a non-resident defendant contacts a Georgia plaintiff, personal jurisdiction has been found lacking where the Georgia plaintiff contacts the out-of-state defendant."). Additionally, "an out-of-state defendant's merely entering into a contract—such as one for legal representation—with a forum resident is insufficient to pass the minimum contacts test." Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C., 723 F. App'x. 871, 875 (11th Cir. 2018) (citing Diamond Crystal, 593 F.3d at 1268).

The relevant events giving rise to Plaintiffs' claims for breach of fiduciary duties and fraudulent concealment regarding Defendants' representation of Plaintiffs before the USPTO occurred in Virginia where the USPTO is located, and in Philadelphia, where the B&H lawyers, including the partner with whom Beckham contracted, Jeffrey H. Rosedale ("Rosedale"), were located at the time of the alleged torts. See Am. Compl. ¶¶ 15-16, 18, 35; id. ¶ 15 ("Jeffrey H. Rosedale, Ph.D. is a partner in Defendant B&H's Philadelphia, Pennsylvania office."); Letter

from Rosedale to Beckham (Feb. 10, 2015) ("Engagement Letter") [Doc. 31-5] (memorializing the agreement for B&H to represent Plaintiffs and stating that Rosedale would "be primarily responsible for the supervision of the [representation of Plaintiffs].").

The Eleventh Circuit's opinion in Rowe, 723 F. App'x. at 875-77, is on all fours with this case. In that case, Georgia plaintiffs brought suit for legal malpractice and fraudulent misrepresentation against a nonresident law firm and nonresident lawyers from Florida. The lawsuit arose from legal representation in a separate racial discrimination lawsuit that was filed in the state of New York. Id. Notwithstanding allegations that included hundreds of telephone calls, faxes, and other communications made by the nonresident defendant lawyers to the plaintiffs in Georgia, in addition to several in-person meetings in Georgia, and at least one deposition conducted in Georgia, the court found that the "contacts giving rise to the litigation occurred, on the whole, in either New York or Florida" where the litigation was taking place and where the lawyers were located, respectively. Id., 723 F. App'x. at 876. The Court found that the contacts with Georgia were not sufficient to satisfy due process:

> Unlike the ongoing contacts that occurred in Georgia in Diamond Crystal Brands, Inc., the contacts in this case demonstrate random or attenuated contacts within the State directly, all of which tie to ongoing litigation occurring in an out-of-state forum. For these reasons, we

15

conclude that subjecting the Gary Defendants to jurisdiction in Georgia would violate Due Process.

Id.

Similarly, in this case, the relevant events giving rise to Plaintiffs' claims occurred in Virginia or Philadelphia and Grissett's contacts with Georgia "demonstrate random or attenuated contacts within [Georgia], all of which tie to ongoing litigation occurring in an out-of-state forum." Id. Moreover, unlike Rowe where the nonresident lawyer defendants were alleged to have had several in-person meetings with their client in Georgia and conducted at least one deposition in Georgia, there are no allegations that Grissett ever visited Georgia in person as part of his representation of Plaintiffs. In fact, it is undisputed that Grissett does not and has never resided in Georgia, has never been licensed to practice law in Georgia, and, as it relates to the representation of Beckham that is the subject of this lawsuit, "never engaged in any negotiations, meetings, or conferences in Georgia." Grissett Decl. ¶¶ 3-5, 8. While the fact that Grissett never appeared physically in Georgia as a part of his representation of Plaintiffs is not dispositive of the due process portion of the jurisdictional inquiry, this fact is relevant. See Burger King, 471 U.S. at 476; see also TRS & Assocs., Inc. v. Document Imaging Techs., Inc., No. 1:08-CV-03264, 2009 WL 2778256, at *6 (N.D. Ga. Aug. 25,

2009) (holding that the fact that the nonresident defendant never appeared physically in Georgia is relevant).

Additionally, in Rowe, the Eleventh Circuit cited favorably the Tenth Circuit opinion of Newsome v. Gallacher, 722 F.3d 1257 (10th Cir. 2013), articulating its agreement with the majority of other circuits which have addressed the issue of whether "out-of-state legal work on an out-of-state matter can subject an out-of-state lawyer to personal jurisdiction in the client's home forum," and holding that a nonresident lawyer's agreement to represent a forum resident is "is insufficient to pass the minimum contacts test." Rowe, 723 F. App'x. at 875 (quoting Diamond Crystal, 592 F.3d at 1268, and Newsome, 722 F.3d at 1279-81 (agreeing "with the majority that an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges.")). The Eleventh Circuit emphasized that Newsome "does an excellent job analyzing the majority and minority cases that answer whether an out-of-state attorney's representation of a client is, in itself, enough to grant federal courts personal jurisdiction over the attorney," and found "no reason to depart from the

Tenth Circuit's well-reasoned analysis of this issue." Id., 723 F. App'x at 875 n. 4.[3]

Based on the allegations in the Amended Complaint and the evidence before the Court, the Court finds that Grissett's contacts with Georgia were attenuated and subjecting him to jurisdiction here would violate due process. See Rowe, 723 F. App'x 876.

### 2.    Fair Play and Substantial Justice

Because of the Court's finding that Plaintiffs have failed to demonstrate that Grissett had sufficient minimum contacts such that he could reasonably expect to be haled into court in Georgia, the Court need not examine whether its exercise of jurisdiction over defendants would "offend traditional notices of fair play and substantial justice." Diamond Crystal, 593 F.3d at 1253. Nevertheless, the Court finds that this Court's exercise of jurisdiction would raise concerns in this area.

---

[3] The Court notes that in analyzing minimum contacts in the jurisdictional context, "great weight is often placed on which party initiated the contact that led to the business relationship." TRS & Assocs., Inc. v. Document Imaging Techs., Inc., No. 1:08-CV-03264, 2009 WL 2778256, at *6 (N.D. Ga. Aug. 25, 2009). While it is not clear if Beckham initiated contact with B&H or vice versa, see Am. Compl. ¶ 35 ("In January 2015, Ms. Beckham is introduced to Defendant B&H lawyer, Jeffrey Rosedale," it is clear that Grissett did not initiate any contact with Plaintiffs in Georgia as it is undisputed that he "did not solicit business from or negotiate any contract with Ms. Beckham" related to the legal work that is the subject of this lawsuit. Id. ¶ 9.

> Courts look to five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies.

Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1372 (N.D. Ga. 2013) (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1276 (11th Cir. 2002)). Because far more of the relevant conduct occurred elsewhere, (1) Georgia has a minimal interest in adjudicating the dispute, (2) the burden facing Grissett, an individual attorney who is no longer employed by B&H, likely would be significant, and (3) it would be inefficient to require Grissett to be subject to litigation in a state in which such minimal activity occurred. See Rowe, 723 F. App'x at 876 ("Although unnecessary, we also conclude that the district court correctly ruled that exercising personal jurisdiction in this case would violate traditional notions of fair play and substantial justice.").

Consequently, Grissett's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

## IV.    ANALYSIS – MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiffs move for limited jurisdictional discovery "[b]ecause Grissett's Motion [to Dismiss] presents factual questions addressing jurisdiction." Pls.' Mot.

19

for Disc. ¶ 6.  Specifically, Plaintiffs seek discovery regarding Grissett's gross annual billing while at B&H, including billing to clients in Georgia.  Id. ¶ 12. Plaintiffs also seek discovery regarding the nature of Grissett's patent prosecution practice while at B&H, including the locations of the clients he represented "to determine whether he could reasonably expect to be haled into Court in Georgia." Id. ¶ 13.

Defendants oppose Plaintiffs' Motion for Limited Jurisdictional Discovery, arguing that Plaintiffs have failed to make a prima facie case for specific jurisdiction over Grissett and the present motion seeks discovery that is not tailored to the allegations in the Amended Complaint or Grissett's Declaration which establishes that he does not have the requisite minimum contacts in the state of Georgia such that the exercise of jurisdiction would comport with due process. Defs.' Opp'n to Pls.' Mot. for Disc. [Doc. 33] at 2-3.  Defendants maintain that none of the information Plaintiffs seek "relates to the factual allegations that Plaintiffs made in support of their jurisdictional arguments, nor does it even relate to the claims at issue" and instead seek to explore the billing and location of other clients in matters unrelated to this case.  Id. at 4-5.

"The plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction."  Henriquez v. El Pais Q'Hubocali.com, 500

F. App'x 824, 830 (11th Cir. 2012) (citation and quotation omitted). "The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (quoting Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729 n.7 (11th Cir. 1982)). "Nonetheless, a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction, or if the proposed discovery seems unlikely to shed light on the jurisdictional question." Cold Smoke Capital, LLC v. Gross, No. 1:11-CV-3558-WSD, 2012 WL 3612626, at *8 (N.D. Ga. Aug. 21, 2012) (quoting Charles Alan Wright et al., 8 Federal Practice and Procedure § 2008.3 (2010)).

A trial court has discretion when ruling on a motion for discovery. Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264 (11th Cir. 2006). It is an abuse of discretion, however, if a court orders jurisdictional discovery when a plaintiff fails to establish a prima facie case of personal jurisdiction. See Butler v. Sukhoi Co., 579 F.3d 1307, 1314 (11th Cir. 2009) ("Inasmuch as the complaint was insufficient as a matter of law to establish a prima facie case that the district court had jurisdiction, the district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue."); Andrews v. Mazda

Motor Corp., No. 1:14-CV-3432-WSD, 2015 WL 1851159, at *7 (N.D. Ga. Apr. 22, 2015) (denying jurisdictional discovery because the plaintiff failed to establish a prima facie case of personal jurisdiction and the discovery sought does not support its jurisdictional position). Accordingly, because Plaintiffs have failed to establish a prima facie case of personal jurisdiction over Grissett, the Court must deny their request for jurisdictional discovery. Diulus v. Am. Express Travel Related Servs. Co., Inc., 823 F. App'x 843, 849-50 (11th Cir. 2020) ("Because the Diuluses did not meet their initial burden to allege a prima facie case of personal jurisdiction, we cannot say it was an abuse of the district court's discretion to deny them jurisdictional discovery.").

Even if Plaintiffs established a prima facie case of personal jurisdiction (which they have not), Plaintiffs' request fails because it is not apparent that the discovery they are seeking would advance their position that this Court has specific personal jurisdiction over Grissett. Plaintiffs indicate that they would seek billing records and the identities and locations of Grissett's clients while he worked at B&H, but they do not articulate how this discovery would support their theory of personal jurisdiction. Nor do Plaintiffs suggest what, if any, contacts related to this lawsuit that they would find through discovery that would render this Court's exercise of personal jurisdiction over Grissett consistent with due process. See

22

Muckle v. Marriott Int'l, Inc., No. 1:14-CV-3957-RWS, 2015 WL 11492539, at

*3-4 (N.D. Ga. May 14, 2015) ("[I]f a plaintiff fails to specify what information it

believes could be discovered, jurisdictional discovery is not required.").

Presumably, Plaintiffs are already aware of all of the contacts Grissett had with

them in Georgia, which is what the allegations in the Amended Complaint are

based upon.  The Court has accepted those allegations as true and has found that

they are not sufficient to confer specific personal jurisdiction.  Beyond those

alleged contacts related to the claims in this case, discovery regarding other clients

on unrelated matters would not support any theory of specific personal jurisdiction

over Grissett.  See Louis Vuitton Malletier, 736 F.3d at 1355 (quoting Fraser v.

Smith, 594 F.3d 842, 850 (11th Cir. 2010)) ("[A] fundamental element of the

specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at

least one of the defendant's contacts with the forum.").  Nothing about Grissett's

contacts with other clients in Georgia would be related to Plaintiffs' claims in this

case.

     "The purpose of jurisdictional discovery is to ascertain the truth of the

allegations or facts underlying the assertion of personal jurisdiction.  It is not a

vehicle for a fishing expedition in hopes that discovery will sustain the exercise of

personal jurisdiction."  Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.,

915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) (internal punctuation and citation omitted).  Because this Court has accepted the jurisdictional allegations in Plaintiffs' Amended Complaint as true and found that they are deficient to confer specific personal jurisdiction, Plaintiffs have not alleged any facts to support specific personal jurisdiction the veracity of which could be tested by information gathered from additional discovery.  See Kason Indus. v. Dent Design Hardware, Ltd., 952 F. Supp. 2d 1334, 1353 (N.D. Ga. 2013) (quoting Atlantis Hydroponics, Inc., 915 F. Supp. 2d at 1380) ("Thus, there are no disputed facts regarding long-arm jurisdiction; the Court will not grant [plaintiff] discovery on a mere 'hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction.'"); Atlantis Hydroponics, Inc., 915 F. Supp. 2d at 1380 (denying motion for jurisdictional discovery where there were no disputed jurisdictional facts, but merely a desire on the part of Plaintiff to find facts that would support jurisdiction); Vogt v. Greenmarine Holding, LLC, No.1:01-CV0311JOF, 2002 WL 534542, at *7 (N.D. Ga. Feb. 20, 2002) (denying motion for jurisdictional discovery as "inappropriate and ineffective" where even the proffered testimony the plaintiffs anticipated adducing would fail to make out a prima facie case of personal jurisdiction).  Accordingly, Plaintiffs' Motion for Limited Jurisdictional Discovery is **DENIED**.

24

V.    **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendant Gregory

Grissett's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 22] is

**GRANTED**, and Plaintiffs' Motion for Limited Jurisdictional Discovery [Doc. 27]

is **DENIED**.

**IT IS SO ORDERED** this 17th day of August, 2023.

MARK H. COHEN
United States District Judge